# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 1888 | DATE | 4/29/2003 |
| CASE TITLE | Palasti vs. Federal Express Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Before the court is Defendant's Motion for Summary Judgment [12-1]. For the reasons stated on the attached Order, Defendant's motion [12-1] is granted.

*Trial date set for July 15, 2003 is stricken.*

/s/ Charles R. Norgle

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAY 01 2003 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAY 0 1 2002

KAREN L. PALASTI, )
) No. 02 C 1888
Plaintiff, )
) HONORABLE CHARLES R. NORGLE
vs. )
)
FEDERAL EXPRESS CORPORATION, )
)
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is granted.

### I. BACKGROUND

On March 15, 2002, Plaintiff, Karen L. Palasti ("Palasti"), filed suit against her present employer, Federal Express Corporation ("FedEx"), claiming violations of both the Equal Pay Act, 29 U.S.C. § 206(d)(1), Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981(a). Specifically, Palasti complains that FedEx paid her less than similarly situated male employees.

In November of 1994, FedEx hired Palasti as a seasonal courier to work at its South Holland, Illinois station. In October of 1995, FedEx hired Palasti as a regular part-time courier with a route at the South Holland station. In October of 1996, Palasti began to work at a new FedEx station located in Michigan City, Indiana, in order to take over the route of a driver who had resigned. Palasti was never officially transferred from the South Holland location to the Michigan City location. During this time FedEx began to move more of its routes to the new Michigan City facility.



In doing so, FedEx offered transfer letters to couriers whose routes would be moving to the new location. It is unclear whether Palasti ever received a transfer letter or received one in June of 1997.[1]

On June 8, 1997, FedEx tendered an offer letter to Palasti, offering her a swing driver position at the Michigan City location. A swing driver is a courier without a specific route and is used to fill in wherever there is a staffing shortage. Additionally, to work as a swing driver, a courier must obtain both a Department of Transportation and Hazardous Material certification. The offer was subject to FedEx's standard twelve-month non-transfer rule. Palasti signed the letter and accepted the new position.

In October, 1997, Palasti requested a hardship transfer back to the station in South Holland, Illinois. That request, while initially approved by her supervisor, was ultimately denied later that month. After Palasti's request was denied, she applied for three other FedEx positions closer to her home. However, she was not considered for these positions because she was not eligible to transfer due to the twelve-month non-transfer clause in the Michigan City transfer letter. On June 19, 1998, Palasti voluntarily resigned from her position as a full-time Swing Driver. At the time she resigned, Palasti was paid $12.02 per hour.

In August, 1998, Palasti began to inquire about returning to work at FedEx. According to FexEx policy 4-30 (Def.'s Mot. For Summ. J., Ex. G), employees who resign from their position lose the senority they have accumulated, unless reinstated by the authorization of the Vice President of Personnel or the Chief Personnel Officer. Palasti was unable to obtain such authorization and was

---

[1] All disputed material facts are taken in a light most favorable to Palasti. However, as stated later in this opinion, whether or not Palasti received the letter is not a material fact.

2

told that she could follow the new hire process. The new hire process begins with an applicant attending an open house to fill out applications. Palasti followed the new hire process and was offered a part-time courier position at the FedEx Aurora facility. The offer was made orally and by a letter from Sabiena Foster, the Operations Manager for FedEx in the Chicago Metro District. As stated in the letter, Palasti was to be paid $11.91 per hour in her new position, eleven cents less than she was previously paid. Palasti accepted the offer.

In February of 1999, Palasti transferred to the FedEx facility in Hillside, Illinois where she worked both full-time and part-time. Palasti has worked various routes and has taken an extended leave of absence. Palasti works for FedEx to this day.

On March 14, 2002, Palasti filed this lawsuit claiming that FedEx treated her differently from similarly situated males by failing to transfer her and then failing to re-hire her at her former hourly rate.

## II. DISCUSSION

### A. Standards for Summary Judgment.

Summary judgment is permissible when "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999). In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal

Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c), see also, Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir.1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962), see also, First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Because this is FedEx's motion for summary judgment, the court must view the record and all inferences in a light most favorable to Palasti. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, No. 02-3373, – F.3d – (7th Cir., April 25, 2003) citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990).

**B. Palasti's claim under the Equal Pay Act.**

The Equal Pay Act, an amendment to the Fair Labor Standards Act, makes it illegal to pay workers of one gender less than workers of the other gender "in return for doing the same work unless the pay differential is justified by factors other than sex." Fyfe v. City of Fort Wayne, 241 F.3d 597, 600 (7th Cir. 2001); Wollenburg v. Comtech Mfg. Co., 201 F.3d 973, 975 (7th Cir. 2000). In order to prevail under the Equal Pay Act, Palasti must establish: "(1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill,

4

effort, and responsibility; and (3) that the employees have similar working conditions." Markel v. Bd. of Regents of the Univ. of Wis. Sys., 276 F.3d 906, 912 - 13 (7th Cir. 2002); Fallon v. State of Illinois, 882 F.2d 1206, 1208-09 (7th Cir. 1989). She must show that the jobs compared are substantially equal in "actual job performance and content--not job titles, classifications or descriptions." Stopka v. Alliance of Am. Insurers, 141 F.3d 681, 686 (7th Cir. 1998); EEOC v. Mercy Hosp. and Med. Ctr., 709 F.2d 1195, 1197 (7th Cir. 1983). Since job duties "vary so widely, the provisions of the Equal Pay Act must be applied on a case-by-case basis." Id. If Palasti can establish the elements for discrimination under the Equal Pay Act, then the burden shifts to FedEx to prove that the pay disparity is due to: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

Palasti attempts to meet her burden under the Equal Pay Act, in her Affidavit and Memorandum in Opposition to Summary Judgment, by pointing to two other couriers. Pl. Mem. Resp., at 2. According to Palasti's Complaint, Christopher O'Brien and Steve Brown are couriers who, as Plaintiff did, voluntarily left their positions with FedEx. Both were eventually rehired by FedEx, but unlike Palasti, they were rehired at the same rate of pay they had when they left. And although Palasti is domiciled at another FedEx location, she actually works at the same station as Christopher O'Brien and Steve Brown. Thus, according to Palasti, she is performing the same work under the same conditions without the benefit of equal pay in violation of the law. Palasti also attempts to compare herself with Damon Brown, who was hired at the same rate of pay but had no

experience at FedEx. Palasti asserts that because she has experience and trained Damon Brown, FedEx should pay her at least the amount that she was previously earning or more.

FedEx points out several flaws with Palasti's comparisons. First, Palasti is not working the same position she had when she left. Second, FedEx maintains a nondiscriminating policy for rehiring former employees and Palasti failed to meet the exceptions required under the policy as Christopher O'Brien and Steve Brown. Third, even with the comparisons to Christopher O'Brien and Steve Brown, Palasti has failed to meet the prima facie burden under the Equal Pay Act. Fourth, Palasti, Christopher O'Brien and Steve Brown are not similarly situated in all aspects. Finally, even if Palasti was able to establish a case under the Equal Pay Act, FedEx has several affirmative defenses.

The gravamen of Palasti's Complaint is that she was not rehired at the same rate of pay as when she voluntarily resigned from FedEx but similarly situated male employees were. However, as FedEx points out, Palasti is not similarly situated with Christopher O'Brien and Steve Brown. Palasti was rehired at a different location, in a different position that did not require Department of Transportation or Hazardous Material certification, and she went from a full-time employee to a part-time employee. The offer Palasti accepted required her to begin the new hire process, and was made in accordance with the published policy of FedEx. Christopher O'Brien and Steve Brown, on the other hand, qualified for exemptions to the policy. FedEx claims that there was a shortage of available labor at the Hillside location where Christopher O'Brien and Steve Brown were stationed, but not in Aurora where Palasti was rehired. Thus Palasti's use of Christopher O'Brien and Steve Brown as similarly situated employees is misplaced.

Palasti's use of Damon Brown for comparison is equally flawed. The offer FedEx made to Palasti stated clearly that she would be considered a new hire and she would not receive any credit for her service to FedEx from her previous employment. The fact that she is being paid the same amount as a fellow male employee with roughly the same amount of "considered" experience cannot be the basis for a suit under the Equal Pay Act. Since Palasti cannot look to Christopher O'Brien, Steve Brown and Damon Brown as similarly situated, she is unable to establish a prima facie case under the Equal Pay Act. Thus the court grants Summary Judgement for FedEx for Palasti's claim under the Equal Pay Act.

**C. Palasti's claim under Title VII.**

Title VII prohibits an employer to treat employees less favorably with respect to conditions of employment because of their gender. 42 U.S.C. § 2000e-2(a)(1). In order to prevail on a Title VII claim based upon disparate treatment, "a plaintiff must establish that she is the victim of intentional discrimination." Oest v. Illinois Dep't of Corrections, 240 F.3d 605, 611 (7th Cir. 2001); Jackson v. E.B. Brach Corp., 176 F.3d 971, 982 (7th Cir. 1999). Since employers rarely "offer smoking gun remarks indicating intentional discrimination," the Supreme Court has developed a burden-shifting test, first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Robin v. ESPO Engineering Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).

A Title VII plaintiff must establish a prima facie case by showing: "(1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably." Oest, 240 F.3d at 612, See Simpson v. Borg-Warner Auto., Inc.,

196 F.3d 873, 876 (7th Cir. 1999). If the plaintiff establishes her prima facie case, then the burden falls to the employer Defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas Corp., 411 U.S. at 802. If the defendant is able to meet this burden, the plaintiff must provide evidence that the defendant's reasons are not "its true reasons, but were a pretext for discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). See Fallon v. Illinois, 882 F.2d 1206, 1213 (7th Cir. 1989). However, if the Plaintiff cannot meet her original burden of establishing a prima facie case, "the employer is entitled to summary judgment without the courts even reaching the two other steps of the McDonnell Douglas analysis." Oest, 240 F.3d at 612.

1. *Palasti's burden under Title VII*

Palasti is in a protected class and is meeting FedEx's legitimate business expectations. In her Complaint and her Memorandum Opposing Summary Judgment, Palasti states three adverse employment actions. The first is FedEx's failure to officially transfer her along with the male workers transfered in 1996, when the new station in Michigan City, Indiana opened. The second is FedEx's refusal of her request for a hardship transfer in October of 1997, after she accepted the swing position at the Michigan City, Indiana facility. The third is FedEx's refusal to credit seniority for her previous employment at FedEx and thus receive the same rate of pay as other new hires.

In order for a transfer to rise to the level of an adverse employment action there must be more than a "minor change in working conditions." Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996). A purely lateral transfer, which "does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." Id. A transfer

8

"without the loss of benefits does not constitute an adverse employment action." Stutler v. Ill. Dep't of Corr., 263 F.3d 698, 702 (7th Cir. 2001); Place v. Abbott Lab., Inc., 215 F.3d 803, 810 (7th Cir. 2000); Hill v. Am. Gen. Fin., Inc., 218 F.3d 639, 645 (7th Cir. 2000).

However, if the transfer could be considered a demotion it may be an adverse employment action. Collins v. Illinois, 830 F.2d 692, 704 (7th Cir. 1987). Or a transfer may be considered an adverse employment action if the transfer would result in a constructive discharge. Williams, 85 F.3d at 274. These types of lateral transfers are actionable since they prevent the employee from "using his skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted." Herrnreiter v. Chicago Hous. Auth., 315 F.3d 742, 744 (7th Cir. 2002). Thus they create a future financial harm to the employee.

But in this case, Palasti does not complain of this type of harmful transfer. Palasti complains that FedEx failed to offer a transfer to her and then failed to agree to a voluntary hardship transfer. The failure to offer a transfer simply maintains the status quo. The position in which Palasti was employed was not in danger of being eliminated. Since Palasti was not denied new benefits, nor did she lose her current benefits, salary, responsibilities, or chances for further benefits, this failure to offer a transfer cannot be considered an adverse employment action. Likewise, the refusal of a voluntary hardship transfer simply maintains the status quo. Only Palasti's dissatisfaction worsens as she remains in place.

If these types of denials were to constitute adverse employment actions unacceptable under Title VII, then the Federal Courts would become flooded with trivial complaints. As Judge Posner warned in Williamson v. Bristol-Myers Squibb Co., "[o]therwise every trivial personnel action that

9

an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." Williamson, 85 F.3d at 274.

To carry her burden for a failure to rehire, Palasti must prove by a preponderance of the evidence that she is a member of a protected group, that she applied for and was qualified for the position sought, that FedEx rejected Palasti for the position, and that FedEx hired or continued to seek a male applicant, but whose qualifications were similar or less that those of the Palasti. Von Zuckerstein v. Argonne Nat'l Lab., 984 F.2d 1467, 1474 (7th Cir. 1993). Palasti did not want her old position back. She requested a similar position, at a different FedEx facility, in a different state. When she was hired at the FedEx facility in Aurora, Illinois, she was treated the same as other new male and female employees.

Palasti has failed to show any male FedEx employee who is similarly situated. As stated earlier, Christopher O'Brien and Steve Brown are not proper comparitors. In order to be similarly situated, employees must be similar "with respect to performance, qualifications, and conduct." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617 (7th Cir. 2000). Employees are only similarly situated if they deal with the same supervisor, are subject to the same standards, and engage in similar conduct. Id. at 617-18. Palasti was hired at the FedEx facility in Aurora, Illinois while Christopher O'Brien and Steve Brown were hired at the FedEx facility in Hillside, Illinois. The fact that Palasti later transferred to the Hillside location does not change these facts nor the analysis.

2. *FedEx's legitimate non-discriminatory reasons*

Because Palasti is unable to meet her burden of proof of establishing a prima facie case under Title VII, the court need not discuss the second prong of the McDonnell Douglas test, FedEx's

legitimate non-discriminatory reasons for any disparity in pay for Palasti and other male workers. Simpson v. Borg-Warner Auto., Inc., 196 F.3d 873, 878 (7th Cir. 1999). Nevertheless, the court notes that Palasti offers no evidence refuting the reasons provided by FedEx as pre-textual. It is not enough for Palasti to show that FedEx exercised poor business judgment or is erroneous in its decision. Pitasi v. Gartner Group, Inc., 184 F.3d 709, 718 (7th Cir. 1999). Palasti must show that FedEx did not honestly believe the reasons it gave for rehiring Palasti at the lower paying position. Id. Such "evidence must be substantial – a mere scintilla will not suffice." Tincher v. Wal-Mart Stores, 118 F.3d 1125, 1129 (7th Cir. 1997).

Palasti cannot establish a prima facie case for disparate treatment under Title VII by pointing to a failure to transfer or disparate pay. Thus the court grants Summary Judgement for FedEx for Palasti's claim under the Title VII.

### D. Palasti's claim under 42 U.S.C. § 1981(a).

In her original complaint, Palasti in passing points to 42 U.S.C. § 1981(a) as a basis for relief in this matter. Claims for sexual discrimination are not cognizable under 42 U.S.C. § 1981(a). See Friedel v. City of Madison, 832 F.2d 965, 967 n.1 (7th Cir. 1987); Runyon v. McCrary, 427 U.S. 160, 167 (1976); St. Louis v. Alverno College, 744 F.2d 1314, 1317 (7th Cir. 1984). Furthermore, neither Palasti nor FedEx have treated this claim as separate from the Title VII claim, so neither shall this court.

## III. CONCLUSION

For the foregoing reasons, FedEx's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

ENTER: *Charles R Norgle*
CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 4-29-03